UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| POLITE ENTERPRISES CORPORATION PTY LTD., | ) ) ) | |
| Appellant-Creditor, | ) ) | No. 1:13-cv-01089 |
| v. | ) ) ) | Judge Edmond E. Chang |
| NORTH AMERICAN SAFETY PRODUCTS, INC. | ) ) ) | |
| Appellee-Debtor. | ) | |

**MEMORANDUM OPINION AND ORDER**

Creditor Polite Enterprises appeals from the bankruptcy court's order confirming North American Safety Products's Chapter 11 reorganization plan. For the reasons discussed below, the bankruptcy court's order is affirmed.[1]

**I. Background**

The debtor in this case, North American Safety Products, designs, manufactures, and sells safety products to industrial users. R. 21-2, Am. Disclosure Statement at 9. Between 2008 and 2010, North American lost two lawsuits, resulting in substantial judgments against the company. *Id.* The first was in 2008, when Polite Enterprises Corporation prevailed against North American in a patent

---

[1] The Court has jurisdiction over this bankruptcy appeal under 28 U.S.C. § 158(a)(1). Citation to this Court's docket is noted as "R. [docket entry number]." Because the Bates numbering is inconsistent and at times illegible, page numbers correspond to pagination of the .pdf in the CM/ECF entry, rather than to internal pagination within a particular document.When possible, descriptions of the docket entries are included after the docket number.

infringement suit, which ended in a $325,638.83 award against North American. *Id.* Two years later, Janelle Gedmin, a former North American employee, prevailed against the company in an employment discrimination suit; the judgment in that case was $290.742.14. *Id.* Pursuant to an installment-payment agreement between Gedmin and North American, the total balance owed Gedmin is $340,742.14. *Id.*

Unable to satisfy the $665,000 in judgment debts, which were beyond the debts generated in the ordinary course of business, North American filed for voluntary relief under Chapter 11 of the Bankruptcy Code in January 2012. *Id.* at 10. Polite did not file a timely proof of claim, and the case proceeded without it. R. 1-5 at 47. North American filed its original reorganization plan and disclosure statement in June 2012. *Id.* The plan identified one secured creditor, First Midwest Bank (FMB), and six classes of unsecured claims: general unsecured claims (Class 2); the Gedmin judgment (Class 3); a convenience class of claims under $500 (Class 4a); a convenience class of claims between $501 and $1,000 (Class 4b); insider loans (Class 5); and equity interests (Class 6). R. 1-3, Bankruptcy Record on Appeal at 62.

Under the proposed plan, FMB would be repaid in full in monthly installments which would continue beyond the term of the plan. *Id.* at 63. With the exception of the convenience classes, unsecured creditors would receive 20% of their claims in ten quarterly installments. *Id.* at 62-63. Class 4a creditors would be paid in full on the initial distribution date. *Id.* at 63. Class 4b creditors could choose to receive a 20% distribution or to reduce their claims to $500 and receive payment with Class 4a. *Id.* at 64.

North American's disclosure statement disclosed its insiders as follows: President Martin Mobeck and his wife jointly held 85% of the company's shares; Mr. Mobeck held an additional 13.5% in his own name; Nicole Pfeiffer (Mr. Mobeck's daughter) and Sylvia Smusziewicz each held 1%; and Janelle Wozniak held 0.50%. *Id.* at 77. Under the proposed plan, existing shares would be cancelled and new equity in North American would be sold at auction. *Id.* at 64. In the absence of outside bids, the plan provided that Nicole Pfeiffer (who had assumed management responsibilities after her father suffered a stroke) and her husband James would acquire 100% of North American's equity for $35,000 in new value. *Id.*; R. 19, Appellee Br. at 3.

In August 2012, Polite filed a motion to extend the time to file its proof of claim and objections to the proposed plan and disclosure statement. R. 1-3 at 4. By this time, three of the impaired, non-insider classes had voted to accept the plan, and notice of the auction had been published in the Chicago Sun Times. Appellee Br., Exh. 3 at 1; R. 1-7 at 36. The addition of Polite's claim, however, required amendment to North American's reorganization plan. North American filed an amended plan and disclosure statement in September 2012.

The amended plan added Polite as a new Class 7 and prescribed the same treatment as for the unsecured creditors: 20% repayment over fourteen installments, instead of the original ten. R. 1-8, Am. Reorganization Plan at 14. The plan retained the sale and auction procedures outlined in its predecessor, establishing again the Pfeiffers' $35,000 bid as the default sale in the absence of

outside bidders. *Id.* at 14-15. A second notice of sale was published in the Chicago Sun Times on August 8, 2012. R. 26-6 at 2. The bankruptcy court notified all creditors and parties in interest of the impending sale and bidding procedures. R. 21-5 at 11. Ultimately, no bids were submitted outside of the Pfeiffers'. Appellant Br. at 10.

Though the exclusivity period had passed, no creditor submitted a competing plan. Appellee Br. at 4. In the second round of voting, the same three non-insider classes accepted the amended plan, that is, Class 2 (general unsecured claims) and Classes 4a and 4b (the two convenience classes). R. 26-7 at 1. Polite, as the sole member of Class 7, rejected the plan and renewed its objections. R. 21-8, Appellant Br., Exh. 8 at 2. In light of Polite's rejection, North American sought so-called "cramdown" confirmation of its plan pursuant to Section 1129(b) of the Bankruptcy Code.[2]

The bankruptcy court held a confirmation hearing in December 2012, during which the court considered Polite's objections to the amended disclosure statement and reorganization plan.[3] R. 21-5 at 2. The objections relevant to this appeal allege

---

[2] "Generally, a bankruptcy court may confirm a Chapter 11 plan only if each class of creditors affected by the plan consents. Section 1129(b) creates an exception to that general rule, permitting confirmation of nonconsensual plans—commonly known as 'cramdown' plans—if 'the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.'"

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank.*, 132 S. Ct. 2065, 2069 (2012) (internal citation omitted).

[3] All references to the "disclosure statement" and "reorganization plan" in the remainder of this Order refer to the amended disclosure statement and amended reorganization plan, as only those documents are at issue in this appeal.

4

(1) North American's disclosure statement was inadequate; (2) North American improperly classified its unsecured creditors to ensure creation of a consenting, impaired class; (3) the proposed auction violates the absolute priority rule; and (4) the proposed plan is not feasible. R. 1-10 (Polite Objections) at 39–44. Overruling North American's objections, the bankruptcy court concluded "the creation of a convenience class is an appropriate division of the unsecured debt, and . . . the auction is an appropriate method for maximizing the value of the right to possess property of the debtor in response to the absolute priority rule." R. 21-5 (Confirmation Hearing Tr.) at 135. On December 18, 2012, the bankruptcy court entered an order approving the disclosure statement and confirming the reorganization plan. On appeal, Polite renews the objections described above.

## II. Standard of Review

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court for clear error and reviews the bankruptcy court's legal findings de novo. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). Decisions left to the discretion of the bankruptcy court, however, are reviewed "only for an abuse of discretion." *Id.* This is an exacting standard: "a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).

5

## III. Analysis

On appeal, Polite contends that the bankruptcy court erred by confirming North American's reorganization plan and disclosure statement. Specifically, Polite argues that (1) the disclosure statement provided inadequate information to satisfy the purposes of § 1125 of the Bankruptcy Code; (2) the plan violated §§ 1122(a) and 1129(a)(1) by artificially creating an impaired consenting class; (3) the plan's improper creation of the convenience classes, Class 4a and Class 4b, violated §§ 1122(b) and 1129(1) of the Bankruptcy Code; (4) the plan did not satisfy the "fair and equitable" requirement of cramdown confirmation, in part, because it violated the absolute priority rule; and (5) North American did not adequately demonstrate the plan's feasibility under § 1129(a)(11). Each issue is addressed in turn below.

### A. Adequacy of Disclosure Statement

Polite first argues that North American's disclosure statement failed to satisfy the purposes of § 1125 and Local Rule 3016-1 because it did not provide adequate information for creditors to make an informed decision about the reorganization plan. Polite identifies what it believes are three problems with the disclosure's adequacy, starting with the lack of financial information for the year 2011. There is a Local Bankruptcy Rule for the Northern District of Illinois that generally addresses the required information for a Chapter 11 debtor. Local Rule 3016-1 requires Chapter 11 debtors to submit consolidated annual financial statements covering "at least one fiscal year prior to bankruptcy filing." U.S. Bankr. Ct. Rules N.D. Ill., Rule 3016-1(2)(c). In its disclosure statement, North American

submitted tax returns for 2009 and 2010, in addition to copies of monthly operating reports for 2012. Because North American did not submit financial information for 2011, Polite contends the disclosure statement "essentially" failed to comply with the applicable rule.[4] Appellant's Br. at 13.

But the text of Local Rule 3016-1 mandates disclosure of statements covering "at least one fiscal year prior to bankruptcy filing"; it does not mandate disclosure of the fiscal year *immediately* preceding bankruptcy filing. To be sure, disclosure of an entity's most recent financial statements might be most helpful to creditors in evaluating a reorganization plan, but failure to do so does not amount to a *per se* violation of Local Rule 3016-1. This is especially so when an entity files for bankruptcy in January of a particular year, *before* its financial statements for the prior year are likely to be available or finalized. So Local Rule 3016-1 does not straitjacket debtors (and bankruptcy judges) into mandated disclosure of the immediately preceding fiscal year's statements.

Two other points bear mentioning, because they make it even more difficult to characterize the bankruptcy court's decision as clearly wrong. First, Polite had an opportunity to request, via a motion before filing objections, additional financial documents, *see* FED. R. BANKR. P. 2004, but Polite did not so. Second, in its response to Polite's objections, North American offered to supplement its financial disclosures if the bankruptcy court asked for a supplement. R. 21-10, North American Response

---

[4] North American contends Polite failed to raise this issue before the bankruptcy court and it is thus waived. But in its amended objection to North American's disclosure statement, Polite did state that "there is no information whatsoever concerning the results of operations in calendar year 2011." R. 21-7, Polite Amended Objection at 150, ¶15. Accordingly, Polite properly preserved this issue for appeal.

7

at 190 ¶ 17. But the bankruptcy court approved the disclosure statement without requiring any supplementation, R. 21-1, App'x Appellant Br., Exh. 1 at 3, and that was not clear error because North American did provide financial data for the two years before filing for bankruptcy and for the available months in 2012.

Polite's second argument on the disclosure's adequacy is that, according to Polite, North American's liquidation analysis inadequately accounted for the steep drop in the valuation of inventory from 2010 to 2012. Specifically, North American's 2010 tax return valued inventory at $426,568, while a September 2012 operating report valued inventory at $19,000. But North American did adequately address this issue in its response to Polite's objections. North American explained that the age of its equipment (eight to nine years old) justified valuation at liquidation value rather than resale value. R. 1-11, North American Response at 189. In addition, North American explained that it had changed its business model, in the hopes of minimizing costs, to reduce inventory on hand and fulfill orders on an as-needed basis. *Id.* The bankruptcy court thus did not clearly err in denying Polite's objection on this ground.

Finally, Polite challenges the disclosure statement's treatment of FMB's secured claim. Per the terms of a promissory note, FMB held a fully secured claim in the amount of $94,835, set to mature on August 17, 2014. The disclosure statement prescribed the following treatment of FMB's claim (Class 1):

> Upon confirmation of the Plan, Debtor shall continue to pay monthly installment payments to [FMB] in accordance with the terms of the pre-petition agreements between the parties which will continue beyond the term

of the Plan. . . . Upon payment in full of all payments required by the pre-
petition agreements . . ., [FMB] shall release their liens.

R. 21-2, Disclosure Statement at 19.

Polite reads this language as evidence of an undisclosed side agreement between North American and FMB, which would render it "impossible for creditors to judge the feasibility of what is proposed to FMB as the holder of the Class 1 claim." Appellant Br. at 14. Polite so concludes because the plan's treatment of FMB's claim differs from that outlined in the promissory note, and any enforceable loan modification between the parties would need to be in writing. As North American suggests, however, the reorganization plan itself serves as a written modification. And the most natural reading of the plan's treatment of FMB is that North American's installment payments to FMB, in satisfaction of the party's pre-petition agreement, will "continue beyond the term of the Plan" until North American's debt is paid in full, at which point FMB will release its lien. R. 21-2, App'x Appellant Br., Exh. 2 at 19. Properly interpreted, there is no hint of an undisclosed side agreement. Polite's objection on this ground was properly overruled.[5]

---

[5] Polite also argues the plan improperly characterized FMB (Class 1) as an unimpaired class, which is not entitled to vote, when really (according to Polite), FMB's debt was impaired. *See In re Block Shim Dev. Co.-Irving*, 118 B.R. 450, 455 (N.D. Tex. 1990) ("A change in maturity date is an impairment within the meaning of the Code."). But Polite fails to explain why reclassification of Class 1 as an impaired class would affect the adequacy of the information provided in the disclosure statement or the overall feasibility of North American's reorganization plan.

9

## B. Classification of Unsecured Claims

Before a plan is eligible for cramdown confirmation, the Bankruptcy Code requires it to obtain acceptance by at least one impaired class of creditors. 11 U.S.C. § 1129(a)(10). Within an impaired class, approval requires an affirmative vote by creditors holding at least two-thirds in dollar amount and more than one-half in number of the class's claims. 11 U.S.C. § 1126(c). Polite argues that North American anticipated rejection of the plan by Polite and Gedmin, so North American hatched a plot to divide unsecured claims into three classes in order to guarantee the existence of one impaired, consenting class. Polite's argument is premised on the notion that if Class 2 (general unsecured claims), Class 3 (the Gedmin judgment), and Class 7 (the Polite judgment) had been combined into one class of general, unsecured claims, under § 1126, Polite would have sufficiently controlled the class to reject the plan. R. 21-5, Confirmation Hearing Tr. at 5.

This argument is made, however, against the backdrop of the considerable discretion that Chapter 11 debtors are generally afforded in classifying claims under a reorganization plan. *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994). It is true that the Seventh Circuit has cautioned that "[s]ome limits are necessary to offset a debtor's incentive to manipulate a classification scheme and ensure the affirmative vote of at least one impaired class." *Id*. Thus, where similar claims are separately classified, courts must examine the reasons behind a debtor's classification scheme.[6] *Id.*; *see also In re Greystone III Joint Venture*, 995 F.2d 1274,

---

[6] The Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or

1278 (5th Cir. 1991) (rejecting separate classification of creditors as a gerrymandered plan where the creditors were treated identically). But the only evidence Polite offers to support an inference of improper reason is the plan's identical treatment of Classes 2, 3, and 7. Without more, Polite's argument fails in this case.

The Seventh Circuit recognizes a number of valid justifications for classifying similar claims separately: (1) "if significant disparities exist between the legal rights of the [claimholders] which render the two claims not substantially similar;" (2) "if there are good business reasons to do so;" or (3) "if the claimants have sufficiently different interests in the plan." *In re Wabash Valley Power Ass'n*, 72 F.3d 1305, 1321 (7th Cir. 1995) (internal quotations omitted), *abrogated on other grounds by In re Castleton Plaza, LP*, 707 F.3d 821 (7th Cir. 2013). In *Wabash*, the Seventh Circuit upheld separate classification of unsecured claims where a class of trade creditors' "ongoing business relationship" with the debtor rendered its stake in the reorganization sufficiently different from other creditors'. *Id.* at 1321. Just so here. Class 2 consists primarily of trade creditors who continue to do business with North American. Classes 3 and 7, by contrast, are composed of claimholders with no future relation to North American. Because Class 2 has a markedly different interest in North American's reorganization and continued business, both "good

---

interests of such class." 11 U.S.C. § 1122(a). Although this language speaks only to the inclusion of claims within a class, the Seventh Circuit and other courts have recognized a corollary principle (sometimes referred to as the "one clear rule") forbidding the separate classification of similar claims for the purposes of gerrymandering an affirmative vote. *Woodbrook*, 19 F.3d at 317; *see also In re Greystone III Joint Venture*, 995 F.2d 1274, 1278–79 (5th Cir. 1991).

11

business reasons" and "sufficiently different [class] interests" support the plan's classification structure.

An additional aspect of Polite's objection bears discussion. It is true that the plan treated Class 2 the same as Classes 3 and 7 for purposes of payment. And it is also true that prescribing different treatment for Class 2 would presumably have strengthened the credibility of North American's classification scheme under the Seventh Circuit's caselaw construing § 1122(a) of the Bankruptcy Code. *See Greystone*, 995 F.2d at 1278. Section 1129(b)(1), however, conditions cramdown confirmation only on a bankruptcy court's determination that a proposed reorganization plan "does not discriminate unfairly . . . with respect to each class of claims or interests that is impaired under, and has not accepted the plan." 11 U.S.C. § 1129(b)(1). Neither section's statutory text requires classes to be divided up according to the treatment of claims, so to hold that identical payment treatment is conclusive evidence of improper gerrymandering would be to add to the statute. What's more, such a holding might encourage debtors to propose different treatment of classes to avoid the gerrymandering accusation, even when disparate treatment could hamper confirmation (or the plan's success) on other grounds. For these reasons, the Court concludes that the plan's separate classification of Class 2 was within North American's "considerable discretion." *See Woodbrook*, 19 F.3d at 317.

As a final note on the classification argument, it is true that the plan's distinction between Classes 3 and 7 is less defensible: each class represents a single claim resulting from a judgment against North American, to be repaid identically,

12

to a party with no ongoing relationship to the debtor. But because Class 2 properly provided the plan with an impaired, consenting class, Polite's arguments on this point cannot change the outcome of the appeal, and there is no need to definitively decide it.[7]

### C. Convenience Classes

Advancing another variation of the improper-classification argument, Polite challenges the necessity and propriety of Class 4a and Class 4b under the reorganization plan. The Bankruptcy Code allows a plan to "designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience." 11 U.S.C. § 1122(b). Class 4a consists of thirteen claims under $500 each, owed a total of $2,445, to be paid in full on the initial distribution date. Appellant's Br. at 20. Class 4b consists of six claims between $501 and $1,000, owed a total of $4,663.71. *Id.* Class 4b claimholders could choose to reduce their claims to $500 and receive payment in full with Class 4a. *Id.* In total, North American's convenience classes accounted for nineteen of its thirty-two unsecured creditors. *Id.*

Polite contends creation of the convenience classes was not reasonable or necessary because their claims were too few in number and amount to justify their creation. The alternative, however—absorbing these claims into Class 2 with the

---

[7] The bankruptcy court overruled Polite's improper-classification objection on similar grounds: concluding that the convenience classes (Classes 4a and 4b) had to be separately classified, the court determined that Polite's objection on this ground is also unnecessary to resolve, in light of the proper classification of Class 2. R. 21-5, Confirmation Hearing Tr. at 4–7.

13

other unsecured creditors—would require North American to compute, issue, and track fourteen quarterly distributions to each creditor for a maximum of $7.14 each. R. 1-8 at 33. More importantly, the nineteen creditors comprising Classes 4a and 4b benefitted significantly from the plan by receiving a lump sum payment rather than reduced distributions spread out over time. For these reasons, there was adequate justification supporting North American's creation of the convenience classes.

Polite has an alternative argument: even if the convenience classes were legitimately created, their impairments were fabricated to manufacture impaired, consenting classes. With regard to Class 4a, payment in full, plus interest, on the plan's effective date would have rendered the class unimpaired. Instead, the plan offered payment in full, without interest, on the plan's initial distribution date (30 days after the effective date). With respect to Class 4b, Polite contends that North American should have been in a position to pay Class 4b's claimants in full. North American argues it was not in a financial position to have unimpaired either class.

In light of the Court's holding, discussed above, that Class 2 (the trade creditors) was properly classified on its own, the impairment-versus-unimpairment of the convenience classes does not matter for this appeal. In any event, in the bankruptcy court, Polite raised this argument for the first time in its reply brief, which is too late. R. 1-11, Polite Reply Br. at 32-33. At the confirmation hearing, the bankruptcy court did not rule explicitly on the issue of impairment, but ultimately concluded "the creation of [a] convenience class is an appropriate division of the unsecured debt." R. 21-5, Confirmation Hearing Tr. at 21. Whether North American

was in a financial position to satisfy its debts to Classes 4a and 4b immediately, and whether those classes' claims were impaired, are factual determinations reviewed only for clear error. *Wabash*, 72 F.3d at 1321. Polite's failure to offer sufficient evidence—or, in fact, any evidence—to suggest the bankruptcy court clearly erred on this issue constitutes alternative grounds for affirmance.

### D. "Fair and Equitable" Requirement

Polite next argues that the plan fails to meet the "fair and equitable" requirement for cramdown confirmation. As discussed above, the Bankruptcy Code permits confirmation of a plan only if it "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). A subset of this requirement, referred to as the "absolute priority rule," mandates that "the holder of any claim . . . junior to the claims of such class will not receive or retain [any property] under the plan on account of such junior claim." 11 U.S.C. § 1129(b)(2)(B)(ii); *see also Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 (1999). In other words, "[c]reditors in bankruptcy are entitled to full payment before equity investors can receive anything." *In re Castleton Plaza, LP*, 707 F.3d 821, 821 (7th Cir. 2013).

Courts have recognized an exception to the absolute priority rule where a pre-bankruptcy equity investor invests new capital in exchange for equity in the reorganized debtor. *See 203 N. LaSalle*, 526 U.S. at 442. This "new value exception" posits that an investor of new capital is not receiving or retaining an interest "on

account of" his prior equitable ownership in the debtor. *Id.* Instead, the investor gets equity in exchange for the new capital. The Supreme Court considered the new value exception in *203 North LaSalle*. There, a plan offered pre-bankruptcy partners the exclusive right to contribute new capital to retain ownership in the reorganized debtor. *Id.* at 438. The Court rejected the plan not because the prior owners were given an opportunity to reinvest, but because they were given the *exclusive* right to do so. *Id.* at 454. The plan was doomed, the Court said, "by its provision for vesting equity in the reorganized business in the Debtor's partners without extending an opportunity to anyone else either to compete for that equity or to propose a competing reorganization plan." *Id.*

Because North American's plan provided for both forms of competition outlined in *LaSalle*—an open auction and termination of the exclusivity period, allowing anyone to submit a competing reorganization plan—the bankruptcy court overruled Polite's absolute priority objection. R. 21-5, Confirmation Hearing Tr. at 19–21. The Court agrees. Polite argues that North American's auction procedures were merely a "facial attempt" to comply with the post-*LaSalle* new-value standard. In support, it outlines additional steps North American could have taken to maximize the auction's competitiveness: for example, hiring an outside consultant to drum up potential bidders or circulating an informational packet. As the bankruptcy court noted, however, neither *LaSalle* nor its Seventh Circuit progeny dictate any particular set of procedures for inviting competition. Here, North American twice published notice of the sale in the Chicago Sun Times (once for its

16

original plan and once for its amended plan). All creditors were notified of the auction and invited to recruit outside bidders or to bid on the reorganized equity themselves. And by the time Polite had filed its claim, the exclusivity period had run, giving Polite the opportunity to submit a competing plan. If Polite deemed the Pfeiffers' bid inadequate, it could have submitted a more favorable reorganization plan or acquired the new equity in North American itself for the $35,000 asking price—around one-tenth of its claim. Polite did neither. The bankruptcy court's finding that North American satisfied the absolute priority rule was not clearly erroneous. For the same reasons, Polite's objections under § 1122(b)(1)'s broader "fair and equitable" requirement are without merit.

### E. Feasibility

Next, Polite argues that the plan failed to satisfy the feasibility requirement of § 1129(a)(11), requiring a determination that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . ." "In determining that the plan was feasible, the bankruptcy court need not find that it is guaranteed to succeed; [o]nly a reasonable assurance of commercial viability is required." *In re 203 N. LaSalle St. P'ship*, 126 F.3d 955, 960 (7th Cir. 1997) (internal quotation omitted, alteration in original), *rev'd on other grounds*, 526 U.S. 434 (1999). The feasibility of a plan is a finding of fact reviewed for clear error. *See In re Paige*, 685 F.3d 1160, 1188–89 (10th Cir. 2012); *In re Lewis*, 459 B.R. 281, 290 (N.D. Ill. 2011).

Polite's primary contention is that FMB's promissory note includes a balloon payment due on August 17, 2014, which is not provided for in North American's pro forma. As discussed above, the plan supersedes the promissory note, rendering any prior arrangement for a balloon payment to FMB irrelevant to the plan's feasibility. Polite also revives its arguments regarding the inadequacy of North American's financial disclosures. Without reference to the detailed pro forma North American attached to its disclosure statement, Polite conclusorily argues the bankruptcy court could not have found North American's disclosures adequate. The Court disagrees. North American's failure to provide historical data in Polite's preferred format does not render the bankruptcy court's forward-looking feasibility determination clearly erroneous.

### F. Satisfaction of §§ 1129(a)(1), (2), and (3)

On the whole, Polite argues that the all of the alleged inadequacies discussed above render clearly erroneous the bankruptcy court's findings that the plan and disclosure statement satisfied the general requirements of §§ 1129(a)(1), (2), and (3) of the Code. Section 1129(a) allows a court to confirm a plan only if the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

18

11 U.S.C. §§ 1129(a)(1)–(3). But apart from the specific arguments discussed earlier in the opinion, Polite offers no separate and independent arguments that these general Code provisions were violated. And combining the meritless arguments still adds up to no violation of the Code.

## IV. Conclusion

For the reasons stated above, the Court affirms the bankruptcy court's findings that the plan satisfied the requirements of the Code and that the plan should be confirmed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 29, 2014